IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CARL E. A., JR., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Case No.: RDB-17-3229 |
| | * | |
| COMMISSIONER, | * | |
| SOCIAL SECURITY ADMINISTRATION[1], | * | |
| | * | |
| Defendant. | * | |
| | * | |

## AMENDED REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2014–01, the above-captioned case has been referred to me to review the parties' dispositive motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). [ECF 7]. I issued a Report and Recommendations on September 7, 2018. [ECF 20]. On October 15, 2018, the Social Security Administration ("SSA") filed an Objection to the Report and Recommendations. [ECF 23]. Judge Bennett then recommitted the matter to me with instructions to consider the objection, including the new arguments contained therein, and to make any changes required. [ECF 25]. This Amended Report and Recommendations supersedes the original Report and Recommendations. I have now considered the parties' cross-motions for summary judgment, Plaintiff's Reply, the SSA's Objection to the Report and Recommendations, and Plaintiff's Response. [ECF 12, 18, 19, 23, 26]. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency

---

[1] Currently, the position of Commissioner of the Social Security Administration is vacant, and most duties are fulfilled by Nancy A. Berryhill, Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security.

employed proper legal standards. *See* 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I recommend that Plaintiff's motion be denied, the SSA's motion be denied, and the case be remanded pursuant to sentence four of 42 U.S.C. § 405(g).

On January 31, 2013, Plaintiff applied for widower's insurance benefits. (Tr. 19-21). On March 9, 2013, the SSA notified Plaintiff that, although he was entitled to monthly widower's benefits, he would not be paid because the amount of his benefit was less than two-thirds of the amount of his government pension. (Tr. 25-27). Upon Plaintiff's request for reconsideration, the SSA affirmed its initial determination on March 25, 2014. (Tr. 28-38). On June 17, 2016, a hearing was held before an Administrative Law Judge ("ALJ"). (Tr. 94-111). Following the hearing, the ALJ issued an unfavorable decision on September 12, 2016. (Tr. 9-14). The Appeals Council denied Plaintiff's request for further review, (Tr. 4-8), so the ALJ's 2016 decision constitutes the final, reviewable decision of the Agency.

As background, Plaintiff worked for the Department of the Navy and retired on May 3, 2001. (Tr. 110). Based on that employment, he receives a gross monthly annuity of $4,595.00 from a government pension. (Tr. 82). Pursuant to a qualified domestic relations order ("QDRO") issued on December 5, 1989, Plaintiff's ex-wife, Carol A., is entitled to a share of Plaintiff's monthly retirement income. (Tr. 51-77). Accordingly, the government pays $1,428.12 to Carol A. each month, representing a share of Plaintiff's pension benefits. (Tr. 82). Plaintiff married Patricia R. on August 23, 2003. (Tr. 15). Patricia R. died in 2010. (Tr. 20). Subsequently, Plaintiff applied for, and became entitled to, monthly widower's insurance benefits. (Tr. 19-27). The Government Pension Offset ("GPO") provision of the Social Security Act provides that the amount of an individual's monthly Social Security benefit "shall be reduced (but not below zero) by an amount equal to two-thirds of the amount of any monthly

periodic benefit payable to such individual for such month which is based upon such individual's earnings while in the service of the Federal Government or any State (or political subdivision thereof… .)" 42 U.S.C. § 402(k)(5)(A).

The ALJ found that Plaintiff became entitled to receive widower's benefits in July 2012. (Tr. 13). Despite this entitlement, the ALJ determined that Plaintiff's receipt of a government pension subject to the GPO provision required reduction of his Social Security widower's benefits. *Id*. To calculate the GPO amount, the ALJ included the portion of Plaintiff's pension, $1,428.12, that is paid to his ex-wife pursuant to the QDRO, deeming that portion a "court-ordered allotment."[2] (Tr. 14). The ALJ confirmed the SSA's calculation that two-thirds of Plaintiff's full pension amount, including the court-ordered allotment, or $3,063.33, exceeded the amount of his widower's benefits, $2,084.30. (Tr. 13-14). Consequently, the ALJ found that no widower's benefits were payable to Plaintiff. (Tr. 13-14). Plaintiff's sole argument on appeal is that the ALJ erred by wrongfully including, in the GPO amount, the portion paid to his ex-wife pursuant to the QDRO.

Ultimately, my review of the ALJ's decision is confined to whether substantial evidence, in the record as it was reviewed by the ALJ, supports the decision and whether correct legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 404 (1971). The deferential standard of review applied to the agency's findings of fact does not apply to conclusions of law

---

[2] The term "allotment" is found in the SSA's Program Operations Manual System ("POMS") GN 02608.400.C.1, which explains the application of the GPO by "determin[ing] the gross monthly amount payable before any deductions for: health insurance; payroll taxes; allotments; or bonds." Allotment, however, is not defined in POMS or in the ALJ's opinion, and the ALJ does not expressly cite to POMS. Without knowing what standard the ALJ intended to apply, I cannot review the conclusion that the portion paid to Carol A. constituted an allotment.

3

or the application of legal standards or procedural rules by the agency. *Wiggins v. Schweiker*, 679 F.2d 1387 (11th Cir. 1982).[3]

Plaintiff's case turns solely on the question of whether the ALJ applied the correct legal standards in determining the amount of his GPO. The GPO provision requires reduction of a Social Security benefit by two-thirds of the amount of any monthly periodic benefit "payable to" an individual based upon "such individual's earnings while in the service of the Federal Government… ." 42 U.S.C. § 402(k)(5)(A); 20 C.F.R § 404.408a.

The ALJ determined that Plaintiff's full pension amount, $4,595.00, included the "portion of his pension that goes to his ex-wife under a court-ordered allotment." (Tr. 14). Plaintiff argues that the portion of his pension that goes to his ex-wife is not "payable to" him, because it is paid directly to his ex-wife and he does not "receive" it. (Tr. 104). The ALJ rejected Plaintiff's interpretation of the word "received," and found that Plaintiff's "earned benefit is 'received' by him and then per a court order part is paid to his ex-wife." (Tr. 14). Importantly, the ALJ framed the issue as "hing[ing] on [the] interpretation of the word 'received' in [the GPO provision,] 42 U.S.C. 402(k)(5)(A)."). (Tr. 14). However, the word "received" is not found in the relevant portion of the GPO statute. *See* 42 U.S.C. § 402(k)(5)(A). Instead, the word "receive" is found in the SSA regulation defining a "pension" as "any monthly periodic benefit (or equivalent) you receive that is based on your Federal, State, or local government employment." 20 C.F.R § 404.408a(a)(1)(i). While the ALJ may have intended to refer to this

---

[3] Purported statutory restrictions on judicial review will not be found absent clear and convincing evidence of legislative intent. *See Lindahl v. Office of Personnel Management*, 470 U.S. 768 (1985) (holding that the Civil Service Retirement Act barred only judicial review of factual determinations regarding disability and not review of alleged errors of law and procedure). The deferential standard set forth in 42 U.S.C. § 405(g) provides only that findings "as to any fact, if supported by substantial evidence, shall be conclusive…" and suggests no limits on judicial review of the application of law and procedure by the agency.

4

regulation rather than the statute, the ALJ did not provide any explanation of this regulation in his analysis, and did not cite any case law or other authority to support his interpretation. (Tr. 12-14). Indeed, the ALJ never discussed how the GPO provision is applied, using the standard of "an amount equal to two-thirds of the amount of any monthly periodic benefit payable to such individual…" 42 U.S.C. § 402(k)(5)(A). Despite finding that the $1,428.12 in question "goes to [Plaintiff's] ex-wife under a court-ordered allotment," he does not reconcile this finding with the statute's requirement that the amount be *payable to* Plaintiff. *See* (Tr. 14).

On appeal, the SSA now argues that "it is clear that [Plaintiff and his ex-wife] negotiated and agreed on the pension allocation to" his ex-wife based on their Voluntary Separation and Property Settlement Agreement (the "Settlement Agreement"). [ECF 23 at 2]; (Tr. 59-77). As a result, the SSA contends, the "entire monthly amount of $4,595.00 is payable to Plaintiff, but he has chosen to assign a portion of the pension payments to … his former wife." [ECF 23 at 3]. This argument, focusing on the voluntary nature of the allocation, blatantly contradicts the ALJ's finding that the $1,428.12 "goes to [Plaintiff's] ex-wife under a court-ordered allotment" and that "a court has ordered [the $1,428.12] taken from the claimant and given to his ex-wife." (Tr. 14).

The analysis provided by the ALJ in the instant case falls short of explaining why the $1,428.12 paid to Plaintiff's ex-wife should be included in the calculation of Plaintiff's GPO amount. The QDRO "order[s]" the Office of Personnel Management to "make payments directly to [Carol A.] if, as, and when [Plaintiff's] retirement benefits become payable to him" and that "the former spouse, [Carol A.], … shall receive fifty percent of the marital portion of [Plaintiff's] federal civil service retirement benefits." (Tr. 49-50). In addition, the QDRO denotes Plaintiff's ex-wife as an "alternate payee" and states that "[b]enefits will be paid from the plan from which benefits are assigned…to the alternate payee, [Carol A.], under the following formula: [b]enefit

5

= number of years married while in program/number of years in program X 50%." (Tr. 55). The QDRO further states that the "plan will pay benefits to the alternate payee for as long as the participant receives benefits under the plan or until the alternate payee's death." *Id.*

The Court notes that great deference must be given to an agency's interpretation of a statute that it is entrusted to administer. *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 104 S. Ct. 2778, 81 L.Ed.2d 694 (1984). In this case, however, a complete *Chevron* analysis is unnecessary, because the ALJ failed to provide any interpretation of the governing statute, namely the GPO provision.[4] *See* 42 U.S.C. § 402(k)(5)(A). The ALJ did not explain whether the $1,428.12 owed to Plaintiff's ex-wife under the QDRO and the Separation Agreement, is "payable to" Plaintiff, as required by the statute. *See id*. Instead, the ALJ asserted an unsupported interpretation of the word "received," and cited to the GPO provision, which does not use that word.[5] (Tr. 14). Accordingly, the ALJ did not apply the correct legal standards to determine that Plaintiff's Social Security widower's benefits should be reduced pursuant to section 402(k)(5)(A). I therefore recommend remand. In so recommending, I express no opinion as to whether the ALJ's ultimate conclusion that Plaintiff's Social Security widower's benefits should be reduced is correct.

---

[4] Even under the *Chevron* two-step analysis, the ALJ's opinion cannot be sustained because, by misquoting 42 U.S.C. § 402(k)(5)(A), the ALJ does not offer a reasoned interpretation of the statute, let alone a "permissible construction" of it. *See Chevron*, 467 U.S. at 843, 104 S. Ct. at 2782 ("[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.").

[5] Ironically, the ALJ rejected "the claimant's interpretation of the word 'received,'" because "[t]he claimant has offered no case law or other authority in support of his interpretation." (Tr. 14). However, the ALJ likewise offered no case law or other authority to support his own interpretation. The only non-record cite in the ALJ's entire analysis is the erroneous cite to 42 U.S.C. § 402(k)(5)(A) for a word it does not contain in the relevant portion.

**CONCLUSION**

For the reasons set forth above, I respectfully recommend that the Court DENY Plaintiff's Motion for Summary Judgment, [ECF 12], DENY Defendant's Motion for Summary Judgment, [ECF 18], and REMAND the case to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with this Report and Recommendations; and order the Clerk to CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b)(2) and Local Rule 301.5(b).

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report, and such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.

Dated: November 29, 2018                     /s/
                                             Stephanie A. Gallagher
                                             United States Magistrate Judge